```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT

THERMAL SURGICAL, LLC,           )
                                 )
       Plaintiff/Counterclaim    )
            Defendant,           )
                                 )
       v.                        )
                                 )
JEFF BROWN,                      )
                                 )
       Defendant/Counter-        )
       Claimant/Third-Party      )
            Plaintiff,           )
                                 )
       v.                        )
                                 )
JASON LESAGE, GREGORY SWEET,     )   Case Nos. 2:15-cv-220
NUVASIVE, INC.,                  )             2:19-cv-75
                                 )
       Third-Party Defendants,   )
                                 )
and                              )
                                 )
NUVASIVE, INC.,                  )
                                 )
       Plaintiff,                )
                                 )
       v.                        )
                                 )
JEFF BROWN,                      )
                                 )
       Defendant.                )
```

## OPINION AND ORDER

Plaintiffs Thermal Surgical, LLC ("Thermal Surgical") and NuVasive, Inc. ("NuVasive") bring claims in this consolidated action against defendant Jeff Brown for, among other things, breach of a non-competition agreement.  Mr. Brown was formerly employed by Thermal Surgical as a sales representative, and is now allegedly employed by one of Thermal Surgical's competitors.

Thermal Surgical is a distributor of NuVasive medical products. Mr. Brown asserts counterclaims against Thermal Surgical, and third-party claims against NuVasive and Thermal Surgical's founders, Jason Lesage and Gregory Sweet.

Now before the Court is a motion for summary judgment filed by Thermal Surgical, NuVasive, Mr. Lesage and Mr. Sweet ("the NuVasive parties"). The movants contend that all pending claims were resolved in a prior proceeding before the United States Bankruptcy Court for the District of New Hampshire, and that the doctrine of *res judicata* entitles them to judgment. Mr. Brown opposes the summary judgment motion, claiming that the bankruptcy proceeding did not provide him with sufficient due process. He also seeks leave to amend his counterclaims to add a defamation claim based upon post-bankruptcy events.

For the reasons set forth below, the motion for summary judgment is granted in part and denied in part, and the motion for leave to amend is denied without prejudice.

### Factual Background

The following facts are undisputed.[1] Prior to this litigation, Mr. Brown was employed by Thermal Surgical as a

---

[1] Despite receiving the special notice required for a self-represented litigant facing a summary judgment motion, Mr. Brown did not file a response to the movants' statement of undisputed facts. His opposition memorandum contends that there are issues of fact related to his representation in the bankruptcy proceeding and the damages claimed by NuVasive and Thermal Surgical.

medical sales representative.  Thermal Surgical is the exclusive distributor for NuVasive, which is in the business of designing, manufacturing and marketing medical devices used in spinal surgery.  Thermal Surgical claims that beginning in or about October 2014, Mr. Brown began working for a competitor.  In doing so, he allegedly undercut sales and commissions for both Thermal Surgical and NuVasive.  The Complaint asserts four causes of action: Count I, for breach of contractual non-competition and non-solicitation obligations; Count II, for breach of the common law duty of loyalty; Count III, for misappropriation of trade secrets; and Count IV, for punitive damages.

Mr. Brown, through counsel, answered the Complaint.  He also asserted counterclaims against Thermal Surgical and a third-party suit against NuVasive, Mr. LeSage and Mr. Sweet.  The counterclaims allege that Mr. Brown's employment agreements, which included non-competition provisions, were breached by Thermal Surgical and never executed.  The counterclaims consist of 11 causes of action, including claims of fraud, defamation, tortious interference with business relationships, and civil conspiracy.  The Third-Party Complaint alleges joint tortfeasor liability, statutory liability and civil conspiracy.

This litigation continued from its filing date in October 2015 until September 2016, when Mr. Brown filed for Chapter 7 bankruptcy relief in the New Hampshire federal bankruptcy court.

3

His attorney filed with this Court a notice of the bankruptcy
filing, and the case was stayed.  Counsel for Mr. Brown also
moved to withdraw from the case, and Mr. Brown has since been
representing himself in this matter.

Mr. Brown was represented in the bankruptcy case by New
Hampshire bankruptcy counsel.  His first attorney was reportedly
a well-respected practitioner with 35 years of experience in
bankruptcy law.  His second attorney was also well-respected
locally, with 15 years of experience.

The movants contend that Mr. Brown misled the bankruptcy
court about the nature of his financial affairs, and specifically
about whether he had transferred any assets to his ex-wife in the
previous five years.  Investigative efforts reportedly revealed
that Mr. Brown had, in fact, directed over $500,000 of his
payroll to his ex-wife during that time period.  Records also
showed that Mr. Brown's ex-wife still held over $100,000 in her
account, and the Chapter 7 trustee worked to recover those
proceeds for the benefit of the estate.

NuVasive and Thermal Surgical each filed proofs of claim in
the bankruptcy case.  Thermal Surgical sought $315,000 for lost
commissions and violations of the non-competition agreement.
NuVasive sought $1.5 million in lost sales.  The Chapter 7
trustee disputed NuVasive's claim to the extent it sought amounts
already recovered from Mr. Brown's current employer, A2 Medical.

NuVasive subsequently agreed to reduce its proof of claim by $250,000 due to the amount received from A2 Medical, and by another $50,000 in satisfaction for the claims brought here. Those agreements resulted in an assented-to motion for approval in lieu of a formal objection to NuVasive's proof of claim.

On November 30, 2018, Mr. Brown waived his right to discharge in the bankruptcy case.  On December 17, 2018, the bankruptcy court ordered NuVasive's claim reduced to $1.2 million, and allowed Thermal Surgical's claim of $315,000.  The court further ordered that:

> Thermal Surgical, LLC, NUVASIVE, Inc., Gregory Sweet and Jason Lesage are authorized to file motion(s) to dismiss the various counterclaims and third party claims by [Mr. Brown] against them in the matter of Thermal Surgical, LLC v. Jeff Brown, United States District Court for the District of Vermont, Case No. 2:15-cv-00220-wks.  All claims or potential claims held by [Mr. Brown] against Thermal Surgical, LLC, NUVASIVE, Inc., Gregory Sweet and Jason Lesage as of the petition date of September 20, 2016 are hereby resolved and satisfied by this Order.

Thermal Surgical, NuVasive, Mr. Sweet and Mr. Lesage filed such motions to dismiss in this Court, with assent from the Chapter 7 trustee on behalf of the bankruptcy estate.  Copies were also served upon Mr. Brown's bankruptcy counsel, who did not file an objection or other response.  This Court subsequently denied the motions to dismiss without prejudice, ruling that the claims at issue would be addressed in the context of the pending motion for summary judgment.

The bankruptcy trustee's final report ("TFR"), consistent with the bankruptcy court's order, showed allowed amounts of $1.2 million for the NuVasive claim and $315,000 for the Thermal Surgical claim.  The TFR also set distributions of $48,077.97 on NuVasive's claim and $12,620.47 on Thermal Surgical's claim. After the deadline for objections passed, and absent any objection, the TFR was accepted and acted upon by the trustee. Accounting for the paid distributions, NuVasive's claim was reduced to $1,151,922.03 and Thermal Surgical's to $302,379.53. Public records indicate that the Chapter 7 proceeding was closed in December 2019.

When settlement efforts proved unsuccessful, NuVasive brought suit against Mr. Brown in this Court in 2019.  The Court subsequently consolidated the NuVasive case with Thermal Surgical's case, which included Mr. Brown's Counterclaims and Third-Party Complaint.  The Court has lifted the stay, and the NuVasive parties now collectively move for summary judgment on all pending claims, arguing that Mr. Brown's causes of action were resolved in the bankruptcy proceeding and that this Court may now enter judgment in their favor on the basis of *res judicata*.

Mr. Brown opposes the motion for summary judgment, arguing in part that he was not properly represented in the bankruptcy case and that he was thus denied due process.  He also seeks

leave to amend his pleadings to add a claim of defamation.  The defamation claim is based upon statements allegedly made by Mr. Sweet in December 2017.  The motion to amend is opposed, with the NuVasive parties arguing that it is conclusory and that any effort to supplement the claim would be futile.  They also argue that the motion was filed in bad faith in an attempt to avoid the implications of the bankruptcy court's ruling.  Their final contention is that the motion to amend should have no impact on the motion for summary judgment.

## Discussion

### I.   Motion for Summary Judgment

#### A.   Legal Standard

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor.  *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  However, the

7

non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

**B.   *Res Judicata***

"Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotation marks, alteration, and citation omitted). *Res judicata* "is a rule of fundamental repose important for both the litigants and for society." *In re Teltronics Servs.*, 762 F.2d 185, 190 (2d Cir. 1985). It "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The Second Circuit has noted that "[t]hese virtues have no less value in the bankruptcy context; this is particularly true in a Chapter 7 liquidation where it is desirable that matters be resolved as expeditiously and economically as possible." *EDP Med. Comput. Sys., Inc.*, 480 F.3d at 624-25 (citing *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736, 740 (5th Cir. 1993)).

*Res judicata* bars a subsequent litigation when "(1) the prior decision was a final judgment on the merits, (2) the

litigants were the same parties [or in privity], (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same." *Corbett v. MacDonald Moving Servs.*, 124 F.3d 82, 88 (2d Cir. 1997). In this case, the bankruptcy court clearly ordered that all claims being brought by Mr. Brown against the NuVasive parties as of September 20, 2016 were resolved. There was no objection and no appeal of that ruling. The bankruptcy case is concluded, and there are no disputes about privity, jurisdiction, or similarity of causes of action. Accordingly, the Court finds that the assertion of *res judicata* with respect to Mr. Brown's counterclaims and third-party claims is appropriate, and those claims are dismissed.

In addition to dismissal of the claims brought against them, the NuVasive parties ask the Court to apply *res judicata* with respect to the proofs of claim allowed by the bankruptcy court, and to thus order judgment against Mr. Brown on their affirmative claims. For support, they rely on the Second Circuit's holding that "a bankruptcy court order allowing an uncontested proof of claim constitutes a 'final judgment' and is thus a predicate for *res judicata*." *EDP Med. Comput. Sys., Inc.*, 480 F.3d at 625. Mr. Brown protests that the amounts of those proofs of claim, totaling over $1.5 million dollars, are unsupported and have never been proven.

In asking this Court to enter judgment on their affirmative

claims, the NuVasive parties are asserting *res judicata* as an
offensive, rather than defensive, tool.  Offensive application of
*res judicata* is rare, as it is "typically a defensive doctrine."
*St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th
Cir. 2000).  "The Supreme Court has cautioned that the offensive
use of *res judicata* should be examined carefully to determine
whether it would be unfair to the defendant." *Sharp Kabushiki
Kaisha v. ThinkSharp, Inc.*, 448 F.3d 1368, 1371 (Fed. Cir. 2006)
(citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-32
(1979)).  In *Parklane*, the Supreme Court provided a non-
exhaustive list of fairness considerations, including whether the
party in the first action had sufficient incentive to defend
himself vigorously.  439 U.S. at 330.

    If the Court were to grant the NuVasive parties' motion for
summary judgment on their affirmative claims, its ruling would
transform the bankruptcy court's decision into an enforceable
monetary judgment.  At least one Circuit Court has noted,
however, that "[a]n allowed claim in bankruptcy serves a
different objective from that of a money judgment——it permits the
claimant to participate in the distribution of the bankruptcy
estate." *Ziino v. Baker*, 613 F.3d 1326, 1328 (11th Cir. 2010)
(citations omitted).  Similarly, "the assertion of a claim in
bankruptcy is, of course, not an attempt to recover a judgment
against the debtor but to obtain a distributive share in the

immediate assets of the proceeding." *Id.* (quoting *Matter of Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977)).  Depending upon the size of the bankruptcy estate, a distributive share could be far smaller than payment on the entire proof of claim. Correspondingly, and with respect to the fairness considerations encouraged by *Parklane*, the incentive to engage in vigorous litigation would be smaller as well.

Here, the distributions from the bankruptcy estate to NuVasive and Thermal Surgical were far smaller than their proofs of claim, which suggests that the incentive to object was also reduced.  Mr. Brown now submits that those claims are considerably exaggerated and not based in fact.  He also cites the payment already made by his employer.  There is no dispute that the proofs of claim were allowed with only a minor objection by the Chapter 7 trustee, and have not been established in any sort of contested factual presentation.  Without proving their claims, the NuVasive parties ask the Court to fully endorse the bankruptcy court's limited ruling and thereby achieve what could amount to a windfall.  The Court declines to issue such an endorsement.  *See Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1191 (5th Cir. 1982), *vacated on other grounds*, 460 U.S. 1007, *and cert. denied*, 460 U.S. 1013 (1983) ("[T]he finality requirement does not necessarily demand the ministerial act of executing a judgment.  It does not elevate form over substance in

that fashion——the accurate definition of 'finality' in the offensive collateral estoppel context is 'fully litigated.'").

Furthermore, it is not clear from the summary judgment record that NuVasive's affirmative claims meet all of the elements for claim preclusion. Specifically, it is not clear that the factual support for NuVasive's proof of claim was based upon the same claims asserted in the Complaint it brings here. In the bankruptcy proceeding, NuVasive attached to its proof of claim the pleadings filed by Thermal Surgical in 2015. *See* ECF No. 129-12. NuVasive did not file its own causes of action in this Court until 2019, after the bankruptcy court had already allowed the proof of claim. Because the claims asserted in the two actions are not the same, NuVasive's assertion of *res judicata* is limited to the doctrine of issue preclusion. As with claim preclusion, issue preclusion requires the Court to consider questions of fairness, and in this case those considerations counsel against granting summary judgment on the affirmative claims. *See Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 236 (2d Cir. 2018).

While Second Circuit precedent supports treatment of an allowed proof of claim as *res judicata*, the NuVasive parties have offered no case law sanctioning *offensive* use of a bankruptcy

court ruling.[2]  The Supreme Court has determined that "the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied."  *Parklane Hosiery Co.*, 439 U.S. at 331.  Here, Mr. Brown's objections to summary judgment are essentially that he was not represented well in the bankruptcy proceeding, that the proofs of claim are unproven, and that imposing a significant monetary judgment against him without further proof would be unfair.  The Court agrees, and the motion for summary judgment on the movants' affirmative claims is denied.

## II.  Motion to Amend Counterclaims

Mr. Brown's most recent filing, submitted *pro se*, is a motion to amend his counterclaims.  As noted above, the motion seeks to add a claim of defamation.  Mr. Brown alleges that Mr. Sweet, acting as a representative of Thermal Surgical and NuVasive, encountered Jason Vallincourt during a business visit to Fletcher Allen Hospital in December 2017.  Mr. Vallincourt is

---

[2] In *EDP Medical Computer Systems, Inc.*, the bankruptcy court entered an order allowing an uncontested claim filed by the IRS.  The Chapter 7 trustee paid the claim in full.  The debtor subsequently initiated a second proceeding contesting the validity of the taxes underlying the claim and seeking a refund. The Second Circuit held that the order allowing the claim constituted a final judgment, and ruled in favor of the IRS's defensive assertion of *res judicata*.  480 F.3d at 627.

an executive with Spinewave, a medical device company that
competes with Thermal Surgical and NuVasive.  Mr. Brown, in his
work for A2 Medical, represents Spinewave throughout New England.
The proposed counterclaim alleges that Mr. Sweet defamed Mr.
Brown during the encounter with Mr. Vallincourt.  The proposed
amendment does not disclose the content of the alleged statement
by Mr. Sweet.

The NuVasive parties argue that the proposed amendment is
too conclusory to state a plausible defamation claim and is
therefore futile.  "An amendment to a pleading will be futile if
a proposed claim could not withstand a motion to dismiss pursuant
to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of
Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).  To survive a
motion to dismiss under Rule 12(b)(6), "a complaint must contain
sufficient factual matter . . . 'to state a claim to relief that
is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007)).  A plausible claim requires factual allegations that
permit the Court "to infer more than the mere possibility of
misconduct." *Iqbal*, 556 U.S. at 679.  The Second Circuit has
held that all complaints, including those submitted *pro se*, must
allege facts that state a plausible claim for relief.  *See
Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir.
2015).

14

Although a court "should freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), "it is within the sound discretion of the district court to grant or deny leave to amend.  A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted).  In addition to futility, the NuVasive parties contend that Mr. Brown submitted his amended counterclaim in bad faith.

With respect to the question of bad faith, "not much case law exists in this Circuit about what constitutes bad faith for the purpose of denying a motion for leave to amend a pleading." *Youngbloods v. BMG Music*, No. 07 Civ. 2394 (GBD) (KNF), 2011 WL 43510, at *9 (S.D.N.Y. Jan. 6, 2011).  Nonetheless, "it is the defendants' burden to show bad faith." *Blagman v. Apple, Inc.*, 307 F.R.D. 107, 113 n.4 (S.D.N.Y. 2015).  The NuVasive parties suggest that Mr. Brown has asserted his counterclaim in an effort to keep this litigation alive in the face of summary judgment. That suggestion is speculative, and does not satisfy the movants' burden.

The Court therefore turns to the question of futility. Under Vermont law, a defamation cause of action requires: (1) a false and defamatory statement; (2) negligence, or greater fault, in publishing the statement; (3) publication to at least one

15

third party; (4) lack of privilege in the publication; (5) special damages, unless actionable *per se*; and (6) actual harm warranting compensatory damages.  *Lent v. Huntoon*, 143 Vt. 539, 546–47 (1983).  A defamation plaintiff "need not specifically plead the alleged defamatory words but must provide the opposing party with sufficient notice of the communications complained of to enable him to defend himself."  *Benning v. Corp. of Marlboro Coll.*, 2014 WL 3844217, at *4 (D. Vt. Aug. 5, 2014) (internal quotation marks omitted); *see also Solomon v. Atlantis Dev., Inc.*, 147 Vt. 349, 358 (1986) (citing Vt. R. Civ. P. 8(a) and concluding that "[a]lthough the defendant failed to plead the defamatory statements *in haec verba*, he fully informed the plaintiff of the nature and subject matter of the counterclaim").

Here, the proposed amendment alleges a defamatory statement to a third party causing Mr. Brown unspecified damage.  The proposed amendment does not provide any context aside from an interaction in December 2017.  Unless Mr. Brown is asserting *per se* defamation, there are no facts supporting a claim of special damages.  *See Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 726 (D. Vt. 2012), *aff'd*, 570 F. App'x 66 (2d Cir. 2014) ("Vermont law recognizes four categories of slander *per se*; (1) imputation of a crime; (2) statements injurious to one's trade, business or occupation[;] (3) charges of having a loathsome disease. . . ; or (4) charging a woman to be unchaste.")(citation

omitted)).  The bases for actual and punitive damages are also unclear.

The proposed amendment also lacks a clear statement of federal jurisdiction.  If the NuVasive parties ultimately succeed in having their claims brought to a final judgment, only the proposed defamation claim would remain.  Because defamation is a state law cause of action, subject matter jurisdiction would need to be based upon diversity of citizenship.  Federal diversity jurisdiction requires an amount in controversy of at least $75,000.  *See* 28 U.S.C. 1332(a).  The amount in controversy "is measured as of the time that a complaint is filed, and it is established by the face of the complaint and the dollar amount actually claimed."  *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 154-55 (D. Conn. 2016) (internal citations omitted).  Mr. Brown has not alleged an amount in controversy arising out of his proposed claim.

In the context of Rule 12(b)(6), a *pro se* plaintiff will ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Shomo v. City of New York*, 579 F.3d 176 (2d Cir. 2009) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999) (internal quotation marks omitted)).  Here, the Court will not grant Mr. Brown's pending motion, but will allow him another opportunity to present a

proposed Amended Counterclaim.  Accordingly, his motion for leave to amend is denied without prejudice, and Mr. Brown may resubmit a proposed amended pleading, together with an appropriate motion for leave to amend, within 30 days of this Opinion and Order.

### Conclusion

For the reasons set forth above, the pending motion for summary judgment (ECF No. 129) is granted in part and denied in part, and the motion to amend counterclaims (ECF No. 137) is denied without prejudice.  If Mr. Brown chooses to renew his motion to amend, he shall submit his filing within 30 days of the date of this Opinion and Order.

DATED at Burlington, in the District of Vermont, this 30th day of June, 2020.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge

18